# United States Court of Appeals for the Federal Circuit

05-3047

GUY C. PATTERSON

Petitioner,

v.

DEPARTMENT OF THE INTERIOR,

Respondent.

Guy C. Patterson, pro se petitioner.

Cristina C. Ashworth, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director and Robert E. Kirschman, Jr., Assistant Director. Of counsel on the brief were Steven E. Abow and Risa B. Cherry, Attorneys, Office of Personnel Management, of Washington, DC.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

05-3047

GUY C. PATTERSON,

Petitioner,

v.

DEPARTMENT OF THE INTERIOR,

Respondent.

---

DECIDED: September 19, 2005

---

Before SCHALL, <u>Circuit Judge</u>, ARCHER, <u>Senior Circuit Judge</u>, and BRYSON, <u>Circuit Judge</u>.

SCHALL, <u>Circuit Judge</u>.

Guy C. Patterson applied for the position of Attorney-Advisor, GS-0905-11/13, with the Department of the Interior ("agency") in Pittsburgh, Pennsylvania. After the agency did not select him for the position, Mr. Patterson appealed to the Merit Systems Protection Board ("Board"), asserting claims under the Veterans Employment Opportunities Act of 1998 ("VEOA"), Pub. L. No. 105-339, 112 Stat. 3182 (codified at 5 U.S.C. § 3330a <u>et</u> <u>seq.</u>), and the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), Pub. L. No. 103-353, 108 Stat. 3149 (codified at 38

U.S.C. § 4311 et seq.).[1]  After the Board dismissed his appeal for lack of jurisdiction, Patterson v. Dep't of the Interior, PH-3443-03-0078-I-1 (M.S.P.B. Sept. 22, 2004) ("Final Decision"); Patterson v. Dep't of the Interior, PH-3443-03-0078-I-1 (M.S.P.B. Mar. 11, 2003) ("Initial Decision"), Mr. Patterson petitioned us for review.  For the reasons set forth below, we see no error in the Board's dismissal of Mr. Patterson's VEOA claim. However, we conclude that the Board did err in dismissing his USERRA claim. Accordingly, the Board's decision is affirmed-in-part and reversed-in-part, and the case is remanded to the Board for adjudication of the merits of Mr. Patterson's USERRA claim.

BACKGROUND

I.

On July 16, 2002, the agency opened Vacancy Announcement No. 02-13-SOL-PITTSBURGH, soliciting applications for the position of Attorney-Advisor (General) GS-0905-11/13 in its Office of the Solicitor in Pittsburgh, Pennsylvania.  The announcement stated that the position was "in the Excepted Service" and, among other things, requested that applicants submit information pertinent to whether they qualified for a "veterans' preference."  Mr. Patterson submitted an application on July 21, 2002.  His application stated that he had served on active duty with the U.S. Navy from May 1989 through July 1992.

On August 22, 2002, Mr. Patterson sent a letter to the agency inquiring as to the rating assigned to his application.  The agency responded by informing Mr. Patterson that although it had not yet completed the preliminary review of the applications, "no

---

[1]    Unless otherwise indicated, statutory references are to the 2000 version of the United States Code.

numerical score will be assigned," as "[i]t is not the practice of this office to assign numerical scores to attorney applications." After about one month, Mr. Patterson sent a second letter to the agency, inquiring as to the status of his application. The agency subsequently informed Mr. Patterson that it had filled the position.

On October 30, 2002, Mr. Patterson wrote the agency, requesting that it "furnish [him] with the reason or reasons for [his] non-selection . . . pursuant to 5 C.F.R. § 302.101(c)."[2] In addition, Mr. Patterson filed a complaint with the U.S. Department of Labor ("DOL"), alleging that the agency's decision not to select him for the position resulted in a violation of his veterans' preference rights and amounted to discrimination on the basis of his prior military service, in violation of USERRA. On November 13, 2002, the agency provided Mr. Patterson with the following explanation for his non-selection:

> While your academic record appeared good, your resume did not indicate any experience specifically relevant to the work of this office. Your veteran's preference was given consideration as a <u>positive factor</u> in the evaluation process, but as you are aware, selecting a person for an attorney position is a process that requires a careful weighing of a large number of variables. In significant part, I did not feel the preference overcame the lack of relevant experience and/or background.

(Emphasis added). About a week later, DOL notified Mr. Patterson that it had decided to close the investigation into his discrimination complaint based upon its determination that his claims lacked merit.

II.

---

[2] Section 302.101(c) requires that an agency provide a "qualified and available" preference eligible with a statement of the reasons for his or her non-selection for an attorney position. <u>See</u> 5 C.F.R. § 302.101(c)(9).

On November 27, 2002, Mr. Patterson filed an appeal with the Board, asserting that his non-selection by the agency violated his veterans' preference rights under the VEOA and that, by not selecting him, the agency had discriminated against him on the basis of his prior military service, in violation of USERRA. On December 20, 2002, the administrative judge ("AJ") assigned to the case issued a jurisdictional show cause order, requiring Mr. Patterson to come forward with non-frivolous allegations to support his claims. Patterson v. Dep't of Interior, PH-3443-03-0078-I-1 (M.S.P.B. Dec. 20, 2002). Mr. Patterson and the agency both filed responses to the show cause order.

With respect to his VEOA claim, Mr. Patterson alleged that the agency violated his veterans' preference rights by, inter alia, not adding "additional points above his earned rating," as required by 5 U.S.C. § 3309. For its part, the agency argued that attorney positions are excepted from the rating and ranking procedures applicable to veterans' preferences, and that therefore it was not required to follow the scoring procedures set forth at 5 U.S.C. § 3309. The AJ agreed with the agency, reasoning that attorney positions are specifically excepted from the competitive service, and that the agency was therefore not required to "rate and rank" the applicants for the attorney-advisor position. The AJ held that Mr. Patterson "failed to support his VEOA . . . claim with any factual assertions which show that the agency violated any statute or regulation relating to veterans' preference." Initial Decision, slip op. at 7. Accordingly, the AJ dismissed Mr. Patterson's VEOA claim for lack of jurisdiction. Id.

As far as his USERRA claim was concerned, Mr. Patterson alleged that the agency's reason for not selecting him was a pretext, and that, in actuality, the agency decided not to select him because of his prior military service. In support of his claim,

Mr. Patterson argued that, while the agency's purported reason for not selecting him was that it received applications from more qualified individuals, the person actually selected for the attorney-advisor position did not have any notable academic distinction or particularly relevant work experience. The AJ rejected this argument, stating that Mr. Patterson "did not set forth any specific facts which show that the agency treated him more harshly or disparately in non [sic] selecting him for a position when compared to a similar situated individual who did not have prior military service." Id. slip op. at 5. Rather, the AJ concluded, Mr. Patterson's contention that he was more qualified than the person who received the position merely amounted to "vague and generalized statements" and was not sufficient to make out a non-frivolous claim of discrimination based on prior military service. Id. Consequently, the AJ also dismissed Mr. Patterson's USERRA claim for lack of jurisdiction. Id.

The Board denied Mr. Patterson's petition for review of the AJ's initial decision, Final Decision, and Mr. Patterson subsequently appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

ANALYSIS

The scope of our review in this case is limited by statute to whether the Board's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c); Carley v. Dep't of the Army, 413 F.3d 1354, 1356 (Fed. Cir. 2005). The issue of whether the Board has jurisdiction over an appeal is a question of law, which we review de novo. Hayes v. United States Postal Serv., 390 F.3d 1373, 1376 (Fed. Cir. 2004).

On appeal, Mr. Patterson contends the Board erred in concluding that it lacked jurisdiction over his VEOA and USERRA claims. He contends that the Board had jurisdiction over his VEOA claim because he established that the agency's non-selection violated his veterans' preference rights. He contends that the Board had jurisdiction over his USERRA claim because he asserted a non-frivolous allegation of discrimination on the basis of his prior military service. We address each of Mr. Patterson's contentions in turn, starting with his VEOA claim.

I.

A.

The VEOA provides redress for a preference eligible veteran "who alleges that an agency has violated . . . [his or her] rights under any statute or regulation relating to veterans' preference." 5 U.S.C. § 3330a(a)(1)(A) (Supp. 2005).[3] Veterans' preference rights are defined by the Veterans' Preference Act of 1944 ("VPA"), Pub. L. No. 78-359, 58 Stat. 387 (codified at 5 U.S.C. §§ 2108, 3309-3320), and its attendant regulations, see 5 C.F.R. §§ 302.101-302.403 (2005). The VPA generally gives a qualifying veteran, known as a "preference eligible," various preferences in applying for civil service positions within the competitive and excepted services.[4]

---

[3] The VEOA directs preference eligibles to file a complaint regarding veterans' preference with the Secretary of DOL. If the matter is not resolved by the Secretary, an appeal may be taken to the Board. 5 U.S.C. § 3330a(a)(1)(A), (d)(1) (Supp. 2005).

[4] Civil service positions within the federal government are divided into the "competitive service" and the "excepted service." 5 U.S.C. §§ 2102-2103. Competitive service positions include "civilian positions in the executive branch . . . unless specifically excepted therefrom" and "all positions in the legislative and judicial branches of the Federal Government and in the Government of the District of Columbia which are specifically made subject to the civil service laws by statute." 5 C.F.R. § 1.2 (2005). The excepted service "consists of those civil service positions which are not in the

For example, and of relevance to this appeal, section 3309 of title 5 provides preference eligibles with additional rating points in applying for positions in the competitive service. It reads:

> A preference eligible who receives a passing grade in an examination for entrance into the competitive service is entitled to additional points above his earned rating, as follows—
> **(1)** a preference eligible under section 2108(3)(C)-(G) of this title—10 points; and
> **(2)** a preference eligible under section 2108(3)(A) of this title—5 points.

In addition, although on its face section 3309 appears to apply only to positions within the competitive service, Congress, through 5 U.S.C. § 3320, has extended veterans' preference rights to the excepted service as well:

> The nominating or appointing authority shall select for appointment to each vacancy in the excepted service . . . from the qualified applicants <u>in the same manner and under the same conditions required for the competitive service by sections 3308-3318 of this title</u>. This section does not apply to an appointment required by Congress to be confirmed by, or made with the advice and consent of, the Senate.

5 U.S.C. § 3320 (emphasis added).

Congress delegated the responsibility for implementing section 3320 to the Office of Personnel Management ("OPM"). <u>See</u> 5 U.S.C. § 1302(c). Accordingly, OPM has issued regulations setting forth procedures for applying veterans' preference rights to the excepted service. <u>See</u> 5 C.F.R. pt. 302. OPM's regulations state that the general

---

(Cont'd. . . .)
competitive service or the Senior Executive Service." 5 U.S.C. § 2103. Congress has delegated to the President authority to designate civil service positions that are in the excepted service, <u>see</u> <u>id.</u> § 3302(1) (2000) ("The President may prescribe rules . . . . for . . . necessary exceptions of positions from the competitive service . . . ."), and the President has, in turn, delegated this authority to OPM, <u>see</u> 5 C.F.R. § 5.1 (2005).

rating and ranking procedures of 5 U.S.C. § 3309 apply to nominations and appointments in the excepted service when an agency uses numerical scoring in evaluating applicants.

> When numerical scores are used in the evaluation and referral, the agency shall grant 5 additional points to preference eligibles under section 2108(3)(A) and (B) of title 5 . . . and 10 additional points to preference eligibles under section 2108(3)(C) through (G) of that title.

5 C.F.R. § 302.201(a) (2005). However, not all appointments within the excepted service are made using numerical rate and ranking procedures. For these positions, OPM's regulations provide for a more qualitative accounting of veterans' preference rights. See id. § 302.201(b) ("When eligible candidates are referred without ranking, the agency shall note preference as 'CP' for preference eligibles under 5 U.S.C. § 2108(3)(c), as 'XP' for preference eligibles under 5 U.S.C. § 2108(3) (D) through (G), and as 'TP' for all other preference eligibles under that title.").

In addition, OPM has wholly exempted some positions within the excepted service from the appointment procedures of 5 C.F.R. Part 302. See id. § 302.101(c). For these exempted positions, OPM simply directs agencies to "follow the principle of veteran preference as far as administratively feasible." Id. As already seen, in this case the agency treated Mr. Patterson's status as a veteran as a "positive factor." OPM views the positive factor test as consistent with the requirement of section 302.101(c) that, in hiring for certain positions in the excepted service, agencies "follow the principle of veteran preference as far as administratively feasible." (Br. of Appellee at 27-28 & 28 n.7.) OPM includes attorney positions within this exemption. Id. § 302.101(c)(9).

B.

Mr. Patterson's VEOA claim appears to be that the agency violated his veterans' preference rights by failing to rate and rank his application and by failing to accord him 5 additional rating points under 5 U.S.C. § 3309 as a preference eligible. The government's response is that the agency properly accounted for Mr. Patterson's status as a preference eligible by counting it as a positive factor under 5 C.F.R. § 302.101(c) in its review of his application. Mr. Patterson rejoins that the agency still violated his veterans' preference rights in applying the positive factor test because OPM's regulation at 5 C.F.R § 302.101(c), from which the positive factor test flows, is invalid as contrary to the plain language of 5 U.S.C. § 3320.

Mr. Patterson emphasizes that the plain language of 5 U.S.C. § 3320 states that "[t]he nominating or appointing authority shall select for appointment to each vacancy in the excepted service . . . from the qualified applicants <u>in the same manner and under the same conditions required for the competitive service by sections 3308-3318 of . . . title [5]</u>." Moreover, Mr. Patterson continues, section 3309 expressly entitles a preference eligible to an additional 5 or 10 points in his or her qualifying rating and ranking. Accordingly, Mr. Patterson asserts that 5 C.F.R. § 302.101(c), which merely requires an agency to "follow the principle of veteran preference as far as administratively feasible," is invalid as contrary to 5 U.S.C. §§ 3309 and 3320. Mr. Patterson further asserts that the positive factor test, which is OPM's test for implementing 5 C.F.R. § 302.101(c), is similarly invalid. Mr. Patterson contends therefore that the agency violated his veterans' preference rights by following the "administratively feasible" and "positive factor" tests and thereby failing to properly

account for the 5 additional points to which he was entitled under 5 U.S.C. § 3309 as a preference eligible.

The government, on the other hand, contends that 5 C.F.R. § 302.101(c) was promulgated pursuant to OPM's delegated authority to administer the VPA and is thus entitled to deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). The government further contends that, in promulgating 5 C.F.R. § 302.101(c), OPM struck a reasonable balance between the VPA's goal of affording veterans hiring preferences in the excepted service and the excepted service's goal of providing agencies with flexibility in hiring for certain specified positions. In fact, the government asserts, accepting Mr. Patterson's interpretation of the VPA and, specifically, 5 U.S.C. §§ 3309 and 3320, would effectively eliminate the purpose of the excepted service, by requiring agencies to follow formal examination, rating, and ranking procedures before filling any vacancies in that service. The government similarly contends that the positive factor test, embodying OPM's interpretation of how to implement 5 C.F.R. § 303.101(c), is also valid.

C.

As reflected by the arguments of the parties, Mr. Patterson's VEOA claim concerns the procedures used by the agency in filling attorney vacancies. It is undisputed that attorney positions are within the excepted service and that, in making appointments to attorney positions, the agency does not examine and numerically rank applicants.[5] It also is undisputed that, through 5 C.F.R. § 302.101(c)(9), attorneys fall

---

[5] Pursuant to its delegated authority, OPM has created three schedules of excepted service positions: Schedule A, Schedule B, and Schedule C. 5 C.F.R. pt. 213 (2005). Schedule A is of relevance to this case, and is titled, "Positions other than those

within OPM's exemption, which merely requires application of veterans' preference rights "as far as administratively feasible." Therefore, the specific issue before us is whether OPM acted within its delegated authority in promulgating 5 C.F.R. § 302.101(c)(9).

When we review the validity of an agency's interpretation of a statute, our first task is to determine "whether Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842. That is because, "[i]f the intent of Congress is clear, that is the end of the matter," because we "must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id.; see also Doe v. United States, 372 F.3d 1347, 1358 (Fed. Cir. 2004).

The "precise question" addressed by 5 C.F.R. § 302.101(c)(9) is how an agency should apply veterans' preference principles in making hiring decisions for filling attorney vacancies. We do not think Congress has addressed this question. It is true that 5 U.S.C. § 3320 states that nominations and appointments to the excepted service are to be made "in the same manner and under the same conditions required for the competitive service by sections 3308-3318 of . . . title [5]." It also is true that 5 U.S.C. § 3309, relating to the examination of preference eligibles for positions in the

---

(Cont'd. . . .)
of a confidential or policy-determining character for which it is impracticable to examine." Id. § 213.3101. "Examining," for purposes of Schedule A, means "application of the qualification standards and requirements established for the competitive service." Id. "Attorneys" are specifically listed in Schedule A. Id. § 213.3102(d). Attorney positions are therefore within the excepted service. As a result, applicants for them are not subject to examination.

competitive service, states that a qualifying preference eligible is entitled to an increase of 5 points in his or her rating score (10 points if the preference eligible is disabled). However, section 3309 also provides that the increased rating is conditioned on the preference eligible "receiv[ing] a passing grade <u>in an examination</u> for entrance into the competitive service."  5 U.S.C. § 3309 (emphasis added); <u>see also</u> <u>Meeker v. Merit Sys. Prot. Bd.</u>, 319 F.3d 1368, 1372 (Fed. Cir. 2003) ("The Veterans' Preference Act makes clear that veteran preference points, as applicable, are added to the score of a candidate who 'receives a passing grade in an examination for entrance into the competitive service.'").  In addition, while examinations are commonly required for appointments in the competitive service, <u>see</u> 5 U.S.C. § 3304, the President is specifically authorized to make exceptions to the examination requirement, <u>see</u> <u>id.</u> § 3302(2); <u>id.</u> § 3304(b).  Therefore, 5 U.S.C. § 3309 is silent on the issue of how agencies should apply veterans' preference rights to a preference eligible in the competitive service who is not required to pass an examination.  As seen, section 3320 of title 5 refers to examinations and appointments to the excepted service being made "in the same manner and under the same conditions required for the competitive service by sections 3308-3318 of . . . title [5]."  It therefore necessarily follows that Congress has not spoken on the issue of how to apply the principles of veterans' preference to positions within the excepted service that are not subject to examination.  In other words, Congress left a "gap" in the VPA on this issue, and the regulations issued by OPM to fill this gap are therefore entitled to deference under <u>Chevron</u>.  <u>Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.</u>, 125 S. Ct. 2688, 2700 (2005) ("<u>Chevron</u>'s premise is that it is for agencies, not courts, to fill statutory gaps."); <u>see also</u> <u>Chevron</u>,

467 U.S. at 843-44. OPM's regulation at 5 C.F.R. § 302.101(c)(9) fills this gap, since applicants for attorney vacancies in the excepted service are not subject to examination.

We next must determine whether OPM's gap-filling regulation at 5 C.F.R. § 302.101(c)(9) is reasonable and consistent with the VPA. We conclude that it is. The purpose of the VPA is to provide preference eligible veterans with additional benefits in seeking employment within the civil service system. Section 3309 of title 5 does this by providing for set increases in the rating of preference eligibles who receive a passing score on an agency's examination. In the excepted service, OPM still requires agencies to follow this scheme "[w]hen numerical scores are used in the evaluation and referral" of the applicants. 5 C.F.R. § 302.201; see also id. § 302.302(b). However, for attorney positions, OPM has recognized that this scheme is not workable because agencies do not use numerical scores in assessing applicants for such positions. OPM has consequently directed agencies to "follow the principle of veteran preference as far as administratively feasible." Id. § 302.101(c). The agency has interpreted, and OPM has agreed, that this means an agency must consider veteran status as a "positive factor" in reviewing applications. We think this approach represents a reasonable balance between the goals of the VPA and the flexible hiring standards employed by the excepted service for filling attorney vacancies.

Mr. Patterson essentially seeks an interpretation of 5 U.S.C. §§ 3309 and 3320 that would require numerical scoring and ranking in evaluating applicants for all positions within the excepted service. Mr. Patterson argues that such a requirement would not require formal "examination" of the applicants, just numerical ranking based on a comparison of the applicants' qualifications to the agency's description of the

position's requirements. We do not find this argument persuasive. For one thing, as a practical matter, we do not see how Mr. Patterson's interpretation would not require agency examinations. His interpretation therefore ignores 5 U.S.C. § 3302, which allows the President (and, thus, OPM) to except designated positions in the excepted service from the procedures utilized in the competitive service.

In addition, Mr. Patterson's proposed interpretation—that is, his contention that agencies could numerically rate and rank attorney applicants without subjecting them to an "examination"—is, at best, simply another possible interpretation of 5 U.S.C. §§ 3309 and 3320. It is well settled law, however, that where Chevron deference is due, our role is not to substitute the agency's interpretation with what we think might be a better interpretation. Rather, our role is limited to assessing whether the agency's interpretation is reasonable. Chevron, 467 U.S. at 843 n.11 ("[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."). In this case, we hold that 5 C.F.R. § 302.101(c)(9) represents a reasonable interpretation of how 5 U.S.C. §§ 3309 and 3320 apply to attorney positions within the excepted service. The positive factor test, in turn, strikes us as a reasonable way of "follow[ing] the principle of veteran preference as far as administratively feasible," 5 C.F.R. § 302.101(c), in the case of a preference eligible applying for an excepted service attorney position.

In sum, because the agency considered Mr. Patterson's status as a preference eligible a positive factor in evaluating his application, we agree with the Board that Mr. Patterson failed to assert a violation of his veterans' preference rights. We thus see no error in the Board's dismissal of his VEOA claim. We do think, though, that the

dismissal should have been for failure to state a claim upon which relief could be granted, rather than for lack of jurisdiction. The Board had jurisdiction to consider Mr. Patterson's claim, which was brought under the VEOA. However, the claim failed on the merits. See Do-Well Machine Shop, Inc. v. United States, 870 F.2d 637, 639 (Fed. Cir. 1989) ("'[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.'") (quoting Bell v. Hood, 327 U.S. 678, 682 (1946)).

II.

Mr. Patterson also challenges the Board's dismissal of his USERRA claim. He contends that he asserted a non-frivolous USERRA claim based on his allegation that the agency discriminated against him on the basis of his prior military service. USERRA states, in relevant part, that "[a] person who . . . has performed in a uniformed service shall not be denied initial employment . . . by an employer on the basis of that . . . performance of service." 38 U.S.C. § 4311(a). It is undisputed that Mr. Patterson served in the U.S. military and that he was not selected by the agency for the attorney-advisor position. Therefore, the only issue before us is whether Mr. Patterson also made a non-frivolous allegation that the agency's decision not to select him was made on the basis of his prior military service.

We have previously recognized and endorsed the Board's "liberal approach in determining whether jurisdiction exists under USERRA." Yates v. Merit Sys. Prot. Bd., 145 F.3d 1480, 1484 (Fed. Cir. 1998). Under that approach, the "relative weakness of the specific factual allegations initially made by an appellant in his USERRA claim . . . should not serve as the basis for dismissing [his appeal] for lack of jurisdiction," but "if

he fails to develop those allegations, his USERRA claim[] should simply be denied on the merits." Duncan v. United States Postal Serv., 73 M.S.P.R. 86, 92 (1997), cited in Yates, 145 F.3d at 1484. Thus, the Board has held that it has jurisdiction over a USERRA claim where the appellant alleges that (1) he or she served or serves in the military, (2) suffered a loss of a benefit of employment, and (3) the loss of the benefit was due to his or her service in the military. See Yates, 145 F.3d at 1484-85; see also Perkins v. United States Postal Serv., 85 M.S.P.R. 545, 547 (2000) (finding Board jurisdiction where the appellant alleged "that, while he performed well during his first casual appointment, he was not reinstated for a second appointment, although three others who were not veterans were reinstated"); Jasper v. United States Postal Serv., 73 M.S.P.R. 367, 368-71 (1997) (finding that appellant had a right to a hearing on the merits where he alleged that "the agency's action was discriminatory on the basis of his 'being retired military with some disability'"); Duncan, 73 M.S.P.R. at 92 ("An allegation that an appellant's employer took or failed to take various actions based on his status as a veteran, in violation of the protections guaranteed under USERRA, thus would constitute a nonfrivolous allegation entitling him to Board consideration of his USERRA claim. The relative weakness of the specific factual allegations initially made by an appellant in his USERRA claim thus should not serve as a basis for dismissing them for lack of jurisdiction.").

In this case, Mr. Patterson alleged that the agency did not select him on the basis of his prior military service. He further alleged that the agency's reason for not selecting him—i.e., that he was not as qualified as the selected individual—was a pretext, as evident from a comparison of his qualifications to those of the selectee, a non-veteran.

We hold that these allegations were sufficient to establish jurisdiction under the Board's liberal pleading standard for USERRA claims that we endorsed in <u>Yates</u>. <u>See</u> <u>Perkins</u>, 85 M.S.P.R. at 547; <u>Jasper</u>, 73 M.S.P.R. at 368-71; <u>Duncan</u>, 73 M.S.P.R. at 92. Accordingly, we reverse the Board's decision to dismiss Mr. Patterson's USERRA claim and remand the case for further proceedings on the merits of that claim.

## CONCLUSION

OPM's regulation at 5 C.F.R. § 302.101(c)(9) is valid. In addition, the agency did not violate Mr. Patterson's veterans' preference rights by applying the positive factor test when it considered his application for the attorney-advisor position. Accordingly, we affirm the Board's dismissal of Mr. Patterson's VEOA claim, although we do so on the ground that Mr. Patterson failed to assert a claim upon which relief could be granted, rather than upon the ground that the Board lacked jurisdiction. However, the Board did err in dismissing Mr. Patterson's USERRA claim. Under the liberal pleading standard applied to such claims, Mr. Patterson asserted a non-frivolous allegation of discrimination on the basis of his prior service in the military. We therefore reverse the Board's dismissal of Mr. Patterson's USERRA claim and remand the case to the Board for further proceedings on the merits of that claim.

## COSTS

Each party shall bear its own costs.

<u>AFFIRMED-IN-PART</u>, <u>REVERSED-IN-PART</u>, and <u>REMANDED</u>